ROGER W. CLARK, ESQ. (#108982)
Email: rclark@cgold.cc
ROBERT D. GOLDBERG, ESQ. (#137356)
Email: rgoldberg@cgold.cc
**THE CLARK LAW GROUP**
11355 W. Olympic Boulevard, Suite 303
Los Angeles, California 90064
Telephone: (310) 478-0077
Facsimile: (310) 478-0099

Attorneys for Plaintiff, **STARR INDEMNITY & LIABILITY COMPANY**

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, a TEXAS CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL J. AVENATTI, an Individual and citizen of California, AVENATTI & ASSOCIATES, APC, a California Professional Corporation, PASSPORT 420, LLC, a Delaware Limited Liability Company, WILLIAM PARRISH, an Individual and citizen of California, SPRING CREEK RESEARCH, LLC, a California Limited Liability Company, ALEXIS GARDNER, an Individual and citizen of Georgia, and the UNITED STATES OF AMERICA, and DOES 1 to 25, INCLUSIVE, <br><br> Defendants | CASE NO.: 8:19-cv-1704 <br><br> **PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER** <br><br> **[DEMAND FOR JURY TRIAL]** |

1

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

**GENERAL ALLEGATIONS**

Plaintiff STARR INDEMNITY & LIABILITY COMPANY, a Texas corporation (hereinafter "Starr Aviation"), brings this Complaint for Declaratory Relief, Rescission and Interpleader against Defendants MICHAEL J. AVENATTI, an Individual and citizen of California, AVENATTI & ASSOCIATES, APC, a California Professional Corporation, PASSPORT 420, LLC, a Delaware Limited Liability Company,  WILLIAM PARRISH, an Individual and citizen of California, SPRING CREEK RESEARCH, LLC, a California Limited Liability Company, ALEXIS GARDNER, an Individual and citizen of Georgia, and the  UNITED STATES OF AMERICA, and DOES 1 to 25, INCLUSIVE (collectively "Defendants") and alleges as follows:

**FEDERAL JURISDICTION AND VENUE**

1.     This is an action for declaratory relief, pursuant to the Federal Declaratory Relief Act, Title 28, U.S.C., Section 2201, brought against the Defendants, because Starr Aviation, in these rather unusual circumstances, requires the assistance of the court to determine the rights, obligations and interests of the parties, or absence and lack thereof, arising under certain insurance policies issued by Starr Aviation to Passport 420, LLC. The United States of America has indicted Michael Avenatti, accusing him of criminal embezzlement of client funds to

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

purchase an aircraft titled in the name of Passport 420, LLC and purportedly insured under the insurance policies in question, and further accusing him of bankruptcy fraud that might have involved the improper diversion of funds to acquire the insurance policies.

2.      If these allegations are substantiated, Starr Aviation believes the insurance policies are to be rescinded because Starr Aviation would not have issued the policies if it had known the aircraft had been purchased with embezzled funds or the funds used to purchase the policies had been acquired through a bankruptcy fraud. If rescission is not authorized, Starr Aviation nevertheless believes that one or more exclusions in the policies would apply, causing coverage not to be in order for claims being made, as described below.

3.      If coverage is in order, Starr Aviation requires the assistance of the court to determine who should receive payments under the insurance policies because it reasonably appears there are competing claims to any payments made under the policy. Similarly, if rescission is appropriate, Starr Aviation requires assistance of the court to determine who should receive the return of the premiums paid for the policies.

4.      There is complete diversity pursuant to Title 28, U.S.C., Section 1332, as Plaintiff Starr Aviation, a Texas corporation, is headquartered in New York, and all of the defendants are citizens of California, or possibly Georgia, except for the

3

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

United States of America.  The amount in controversy exceeds $75,000.00 (Seventy-Five Thousand Dollars) exclusive of interest and costs.  This Court accordingly has jurisdiction of this action.

5.      There is federal question subject matter jurisdiction pursuant to Title 28, U.S.C., Section 1331 and 28 U.S.C. Section 1346(a)(2).  The United States of America, through Nicola T. Hanna,  acting in his official capacity as the United States Attorney for the Central District of California, has asserted interests in property in a criminal indictment against Michael Avenatti pursuant to 18 U.S.C. 981 (a)(1)(C) and 28 U.S.C. 2461 (c), as more specifically alleged herein, that  may ultimately confer upon the United States of America an interest in the insurance policies which are the subject of this action.  The United States has consented to a suit for declaratory relief in this case pursuant to 5 U.S.C. § 702.

6.      Venue in this District is proper under Title 28, U.S.C., Section 1391(a) since a substantial part of the events giving rise to this action occurred within the District, including the purchases of the insurance policies at issue here, and as discussed more fully below, policies that were delivered within this District.  Moreover, all of the Defendants, with the possible exception of ALEXIS GARDNER, are present and reside in this District, and do business in this District.

///

///

4

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

## INSURANCE POLICIES AT ISSUE AND PARTIES

7.     Plaintiff Starr Aviation is and was, at times material hereto, a corporation organized and existing under the laws of Texas, with its principal place of business in the State of New York.

8.     Starr Aviation issued a Starr Elite Comprehensive Corporate Aircraft Policy to Passport 420, LLC, Policy Number 1000320046-01 with effective dates from January 26, 2017 until January 26, 2018 ("Policy 1").  Policy 1 was issued pursuant to an "Aircraft Insurance Application" submitted by applicant, Passport 420, LLC.

9.     Starr Aviation issued a Starr Elite Comprehensive Corporate Aircraft Policy to Passport 420, LLC, Policy Number 1000320046-02 with effective dates from January 26, 2018 until January 26, 2019 ("Policy 2").  Policy 2 was issued pursuant to an "Aircraft Insurance Application" submitted by applicant, Passport 420, LLC.

10.     Starr Aviation issued a Starr Elite Comprehensive Corporate Aircraft Policy to Passport 420, LLC, Policy Number 1000320046-03 with effective dates from January 26, 2019 until January 26, 2020 ("Policy 3"). Policy 3 was issued pursuant to an "Aircraft Insurance Application" submitted by applicant, Passport 420, LLC.

///

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

11.     Policy 1 and Policy 2 and Policy 3 are sometimes referred to collectively as "The Policies."

12.     Each of The Policies scheduled as an insured aircraft a 2016 Honda Jet, Model HA-420, Serial Number SN42000029, Registration N227WP (the "Aircraft"), providing certain coverages pursuant to the terms, conditions, exclusions and languages of The Policies. Pursuant to the records of the Federal Aviation Administration, and other information publicly and privately available, the title to the Aircraft is owned by defendant Passport 420, LLC ("Passport 420") which is organized under the laws of Delaware with its principal place of business in California within this District.

13.     The defendant, Alexis Gardner, believed to be a citizen of Georgia, possibly California, was a client of defendant, Michael Avenatti, a citizen of California, who allegedly embezzled approximately $2,500,000.00 from Alexis Gardner to purchase the Aircraft scheduled under The Policies issued by Starr Aviation. Upon information and belief, Alexis Gardner may claim some interest against proceeds that might come due under The Policies.

14.     The defendant, William Parrish, a citizen of California living within this District, is a beneficiary, trustor or trustee, or all of the foregoing, of the Parrish Family Trust dated 1997 ("Parrish Family Trust"), based in and a citizen of California with its principal place of business in this District, which is a member of

6

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Spring Creek Research, LLC, a California limited liability company ("Spring Creek Research") with its principal place of business in this District, which in turn is a member of Passport 420. Upon information and belief, William Parrish is claiming that any proceeds that might come due under The Policies shall be paid to him individually, or to Spring Creek Research, or the Parrish Family Trust dated 1997, rather than to Passport 420, the ostensibly titled owner of the Aircraft, or Alexis Gardner or the United States of America.

15.     The defendant, Avenatti & Associates, APC, is a California Professional Corporation ("Avenatti & Associates") with its principal place of business in this District, owned by Michael Avenatti, and is the other member of Passport 420.

16.     The defendant, United States of America, has filed a criminal indictment against Michael Avenatti in this District, alleging that it is seeking forfeiture as part of any sentence in the event of Michael Avenatti's conviction of all right, title and interest in any property derived from any proceeds obtained directly or indirectly as a result of any offense or property traceable to such proceeds. Moreover, the United States of America, through the Internal Revenue Service, has taken possession of the Aircraft for security for payment of certain taxes that are allegedly due and unpaid; or alternatively, the Internal Revenue Service claims that certain taxes are due and unpaid and the Aircraft may serve as security for payment

7

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

of some or all of those taxes. Upon information and belief, the United States of America may claim some interest in The Policies.

17.     Defendants DOES 1 through 25 are actual or potentially interested parties with an alleged interest in The Policies. Starr Aviation does not presently name as defendants in this complaint the DOE defendants because it is uncertain who they are or whether those defendants are making a claim against the Policy.  Starr Aviation reserves the right to name as DOE defendants those interested parties once their identity is learned and it is confirmed they are making a claim under the Policies.

**PASSPORT 420**

18.     On or about April 14, 2016, a Certificate of Formation of Passport 420 was duly executed and filed under the Delaware Limited Liability Company Act (6 Del. C. Sections 18-101, et. seq.)

19.     Upon information and belief, the members of Passport 420 are defendant, Spring Creek Research and defendant, Avenatti & Associates.

20.     Upon information and belief, Spring Creek Research has as its member the Parrish Family Trust dated 1997. The defendant, William Parrish, upon information and belief, as noted above, is a trustor, trustee and/or beneficiary of the Parrish Family Trust.

///

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

21.     Upon information and belief, defendant, Avenatti & Associates, is one-hundred percent owned by defendant, Michael Avenatti who was also the president and chief executive officer of Avenatti & Associates.

22.     On or about January 27, 2017, Passport 420 took delivery of the Aircraft in Greensboro, North Carolina, from Honda Aircraft Company LLC, for a total net price due of $4,383,605.00. Defendant, Michael Avenatti, signed as "Purchaser" ("Passport 420, LLC") in his capacity as Manager of Passport 420.

**OPERATING AGREEMENT OF PASSPORT 420**

23.     Upon information and belief, a "Limited Liability Company Operating Agreement" titled "Passport 420, LLC" was entered into as of July 11, 2016, between Spring Creek and Avenatti & Associates ("Operating Agreement") to "set forth the terms and conditions of their ownership and operation of [the Aircraft]." Pursuant to the Operating Agreement, Passport 420 agreed to lease the Aircraft exclusively to Spring Creek and Avenatti & Associates without flight crew in exchange for Spring Creek's and Avenatti & Associates' agreement to insure, operate and maintain the Aircraft and pay their individual charges and pro-rata amounts as due under the Operating Agreement. Spring Creek and Avenatti & Associates were each fifty percent owners of Passport 420.

///

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

24. Under the Operating Agreement the relationship between Spring Creek and Avenatti & Associates "shall be that of tenants-in-common" and that each Member agreed that the sole and adequate means by which it may divest its Ownership Interest in Passport 420 and the Aircraft "shall be the transfer of the interest in accordance with the terms and conditions of this Agreement." The Operating Agreement provided that the sale of Member's ownership interest in the Aircraft was to be triggered by Notice of Intent to Sell to the other Member. The non-selling Member had the right to purchase the remaining interest in the Aircraft owned by the selling Member, at a fair market evaluation, and if the non-selling member did not exercise its right to buy, the Members agreed to retain an aircraft broker to facilitate the sale of the entire Aircraft to a third party.

25. The Operating Agreement appointed defendant, Michael Avenatti as Manager of Passport 420; and as manager Michael Avenatti had full and complete authority, power and discretion to manage and control the affairs of Passport 420, to make all decisions regarding such matters, and to perform any and all other acts and activities customary or incident to Passport 420's purpose. "The actions of the Manager taken in accordance with this Agreement shall bind the Company."

26. Paragraph 12.5 of the Operating Agreement provides: "Member shall not create or place any Lien against the Aircraft other than a security interest in favor of a financial institution providing financing for the Member's Ownership

10

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Interest and/or the Aircraft (a "Financing") and each Member shall ensure that no Liens are created or placed against the Aircraft by third-parties as a result of its actions, and shall take all actions as may be necessary to discharge and satisfy in full any such Lien promptly after the same becomes known to it."

27.    Paragraph 7.1 of the Operating Agreement states that the failure of a Member to timely pay when due any amount required to be paid by the Member under the Operating Agreement or any other agreement related to the Aircraft or the use of the Aircraft including but not limited to any agreement with a financial institution providing financing for the Member's Ownership interest in the Aircraft shall be a default.

## AVENATTI INDICTMENT

28.    On or about April 10, 2019, a thirty-two-count indictment was handed down against defendant, Michael Avenatti, in the United States District Court, Central District of California ("Central District Indictment"). Paragraph p. on Page 12 of the Central District Indictment is a section titled, "Embezzlement of Client 2's Funds." The Central District Indictment alleges: "On or about January 26 2017, defendant Avenatti caused $2,500,000.00 of the $2,750,000.00 settlement payment [Client 2's money held in an Avenatti trust account] to be transferred [to] Honda Aircraft Company, LLC, to purchase a private airplane for defendant Avenatti's

11

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

company, Passport 420." This is the day prior to Passport 420 taking delivery of the Aircraft in Greensboro, North Carolina.

29.     The Central District Indictment alleges that defendant, Michael Avenatti, was the "effective owner and controlled" Passport 420.

30.     Upon information and belief, Client 2 of Michael Avenatti is Alexis Gardner.

31.     The Central District Indictment includes a "Forfeiture Allegation One" brought pursuant to 18 U.S.C. 981 (a)(1)(C) and 28 U.S.C. 2461 (c). "Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence . . . in the event the defendant's conviction of offenses [including the offenses against Client 2]." The United States of America alleges that defendant Avenatti shall forfeit to the United States of America . . . "all right, title, and interest in any and all property, real and personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offense, or property traceable to such proceeds . . . to the extent such property is not available for forfeiture, a sum equal to the total value of the property."

32.     The Central District Indictment accuses defendant, Michael Avenatti of bankruptcy fraud. An involuntary bankruptcy petition had been initiated against Michael Avenatti's law firm, Egan Avenatti, LLP, in the United States District

12

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Court, Middle District of Florida, on or about March 1, 2017, a proceeding that was later transferred to the United States District Court, Central District of California. Michael Avenatti was allowed to remain as a debtor-in-possession for a period of time, and was under court order to notify creditors of Egan Avenatti before he took compensation for himself. However, the Central District Indictment alleges that Michael Avenatti secretly transferred funds to himself or to organizations he controlled without providing the court ordered notice, leaving the bankruptcy court and its creditors to believe he received zero compensation during the bankruptcy.

33.   Upon information and belief, some of the illegally transferred funds may have been used by defendant, Michael Avenatti, as manager of Passport 420, to pay operational and maintenance expenses associated with the Aircraft, including the payment of insurance premiums to Starr Aviation.

### PARRISH ISSUES NOTICE OF DEFAULT TO AVENATTI

34.   Upon information and belief, on or about August 29, 2018, defendant, William Parrish, issued to defendant, Michael Avenatti, a "Notice of Default" under the Operating Agreement. The Notice of Default recited numerous alleged breaches of fiduciary and alleged breaches of California's Rules of Professional Conduct, arising out of a long-standing attorney-client relationship between William Parrish and Michael Avenatti.

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

35.     Among other things the Notice of Default dated August 29, 2018 stated: "As you know, during the course of your attorney-client relationship with Mr. Parrish, you persuaded him to join you in the purchase of a private jet, and you subsequently formed a limited liability company ("Passport 420") with Mr. Parrish. . . . The purpose of forming Passport 420 was to acquire, own and operate a HondaJet for use by Avenatti & Associates and Spring Creek Research, LLC ("Spring Creek"), an entity controlled by Mr. Parrish. . .  Your conduct in entering into that transaction has caused serious and ongoing harm to Mr. Parrish. In addition to your failure to make adequate disclosures to Mr. Parrish, you have failed in your role as LLC manager . . . This letter serves as notice to you that based on your malfeasance and failure to follow the operating agreement, Mr. Parrish is stepping in to assume the role of manager of Passport 420."

36.     Upon information and belief, defendant, Spring Creek did not and has not issued a "Notice of Intent to Sell" the Aircraft. Instead, it is believed Spring Creek continued to operate the Aircraft up to April 10, 2019.

37.     Upon information and belief, on or about August 20, 2018 (nine days prior to the "Notice of Default"), William Parrish had filed a lawsuit against Michael Avenatti, alleging breach of fiduciary duty, breach of promissory note, account stated, open book account, common count—money had and received, and common count---money lent. The complaint was filed in the Superior Court of the

14

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

State of California, For The County of Santa Barbara, Case No. 18CV04106 ("Santa Barbara Lawsuit One"). The Santa Barbara Lawsuit One alleges that as attorney for William Parrish, Michael Avenatti "took advantage of that trust . . . and persuaded [William Parrish]" to loan him $1,500,000.00 in order to invest in a coffee company, Tully's. "Avenatti falsely promised [Parrish] that he would repay the funds in 45 days. . ." The $1,500,000.00 loan was made in or about June of 2013, and as of August of 2018 remained unpaid.

38.    Defendant, William Parrish, has since filed a second lawsuit against Michael Avenatti, and others, on or about April 2, 2019, in the Superior Court of California, For The County of Santa Barbara, Case No. 19CV01686 ("Santa Barbara Lawsuit Two"). The Santa Barbara Lawsuit Two accuses Michael Avenatti of fraud, conversion, promissory estoppel and professional negligence arising out of an alleged malfeasance relating to the disposition of settlement funds from a prior lawsuit going back to 2013.

## INTERNAL REVENUE SERVICE COLLECTION ACTION

39.    Upon information and belief, the Internal Revenue Service, an agency of the United States of America, initiated a collection action against defendant, Michael Avenatti, in or about September of 2016. This is five months before the purchase of the Aircraft. The collection related to the failure of a company called

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

1   Global Baristas US and a company called Global Baristas, LLC to pay taxes. These

2   companies owned a collection of Tully Coffee Houses in the State of Washington

3   and, upon information and belief, are the same companies related to the

4

5   $1,500,000.00 loan made by defendant, William Parrish to defendant, Michael

6   Avenatti, in or about June of 2013, and which is the subject of the Santa Barbara

7   Lawsuit One.

8

9       40.    According to the Central District Indictment, the defendant, Michael

10  Avenatti, transferred unpaid payroll taxes from Global Baristas US and Global

11  Baristas LLC, to himself or his law firm to make minimal payments to Client 2 and

12

13  others. According to the Central District Indictment: "Beginning on or about

14  October 7 2016, and continuing until at least in or around September 2018 . . .

15  Avenatti corruptly obstructed and impeded, and corruptly endeavored to obstruct

16

17  and impede, the due administration of the internal revenue laws of the United

18  States."

19      41.    Upon information and belief, on or about April 10, 2019, the Internal

20

21  Revenue Service took possession of the Aircraft, as security for payment of certain

22  taxes alleged owed by defendants, Michael Avenatti and/or Avenatti & Associates,

23  or one or more of various corporations or entities owned and controlled by Michael

24

25  Avenatti, pursuant to a warrant filed under seal in the United States District Court,

26  Central District of California; or alternatively, the United States of America took

27

28

16

possession of the Aircraft so that funds derived from the sale thereof may be used to

compensate and reimburse victims of the alleged embezzlements allegedly

committed by Michael J. Avenatti. As of the date of the filing of this complaint,

upon information and belief, the warrant remains under seal.

## PARRISH DEMANDS PAYMENT BE
## MADE TO HIM INDIVIDUALLY

42.   The defendant, William Parrish, following April 10, 2019, filed with

Starr Aviation a "Proof of Claim" requesting that Starr Aviation issue to him in his

individual capacity a payment for the taking of the Aircraft under Endorsement 10

of Policy 3, titled Extended Coverage Endorsement: War Risk For Physical Damage

Coverage, Extortion, and Hi-Jacking Extra Expense Coverage (sometimes "War

Risk Coverage Endorsement"). The demand has been made even though William

Parrish is not the owner of the Aircraft, and a payment direct to William Parrish

would seemingly avoid the creditors and claimants of Michael Avenatti and

Passport 420, the titled owner of the Aircraft.

43.   The term "Physical Damage" is defined by The Policies to mean:

"accidental, direct physical loss of or damage to scheduled aircraft, spare engines or

spare parts during the policy period including ingestion, but it does not include the

///

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

17

loss of use or any residual depreciation in value either before or after any repairs

have been made."

44.    The aircraft has an agreed-upon value in Policy 3 stated at

$4,000,000.00.


## WAR RISK COVERAGE ENDORSEMENT

45.    Subject to the terms, conditions, exclusions and language of Policy 3,

the War Risk Coverage Endorsement provides certain coverages for "confiscation,

nationalization, seizure, restraint, detention, appropriation, requisition for title, use

by, or under the order of any government, public or local authority, whether civil,

military or de facto."  (Section One, Page 1 of the War Risk Coverage

Endorsement).

46.    Exclusion D of The Policies (set forth in Section Seven – Exclusions on

Page 31 of The Policies) state: The insurance provided by the Policy shall not apply:

to illegal, criminal or dishonest acts or activities, alleged or otherwise, committed by

or at the direction of  or with the knowledge and consent of directors or officers of

the insured and with the knowledge at the time that such act was illegal or criminal,

but with respect to the named insured this exclusion shall apply only if such

activities or acts are with the knowledge and consent of an officer or director of the

named insured."

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY
RELIEF, RESCISSION AND INTERPLEADER

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

47. Pursuant to the War Risk Coverage Endorsement the coverage provided therein will not cover any loss, damage or expense arising out of "the repossession or any attempt at repossession by any person or organization having any legal title or lien on the scheduled aircraft or any other type of legal contractual relationship with the insured."

48. Pursuant to the War Risk Coverage Endorsement the coverage provided therein will not cover any loss, damage or expense arising out of "any failure to provide any type of bond, security or any other financial cause whether or not required under a court order." (Page 2 of the War Risk Coverage Endorsement, Exclusion (D)).

## **FIRST CLAIM FOR RELIEF**

### **(Declaratory Relief against All Defendants)**

49. Starr Aviation incorporates herein by reference all of the allegations contained in the above stated paragraphs, as if set forth in full herein.

50. Upon information and belief, the defendant, Michael Avenatti, denies on behalf of himself, Avenatti & Associates ("Avenatti Defendants") and Passport 420, that he embezzled funds from his client, Alexis Gardner, or committed bankruptcy fraud. Further, upon information and belief, William Parrish, on behalf of himself, Spring Creek and Parrish Family Trust ("Parrish Defendants") and

19

Passport 420 denies that Michael Avenatti embezzled funds from Alexis Gardner, or that Michael Avenatti committed bankruptcy fraud.

51.     Upon information and belief, the Parrish Defendants and the Avenatti Defendants claim that even if the Aircraft was purchased with funds embezzled from Alexis Gardner, or The Policies were purchased with funds arising from a bankruptcy fraud, that Starr Aviation is not entitled to rescind The Policies.

52.     Upon information and belief, the Parrish Defendants and the Avenatti Defendants claim that no condition, term or exclusion would apply to preclude coverage even if the Aircraft was purchased with funds embezzled from Alexis Gardner, or The Policies were purchased with funds arising from a bankruptcy fraud, or that the Internal Revenue Service took possession of the Aircraft because of the failure to pay and satisfy tax liens and obligations, or that the United States of America took possession of the Aircraft so that funds derived from the sale thereof may be used to compensate and reimburse victims of the alleged embezzlements allegedly committed by Michael J. Avenatti.

53.     Upon information and belief, Alexis Gardner, The United States of America, and DOES 1- 25, deny that Starr Aviation is entitled to rescind The Policies, deny that one or more conditions, terms or exclusions in The Policies apply to preclude coverage, and contend that any payment due under The Policies shall be paid to Alexis Gardner or the United States of America.

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

54.    Upon information and belief, William Parrish denies that actions taken by defendant, Michael Passport, as manager of Passport 420, are binding upon Passport 420 or Spring Creek Research, or any other entity or person who may claim through Spring Creek Research, including William Parrish. Starr Aviation disputes the contention by William Parrish and alleges that actions taken by Michael Avenatti as manager of Passport 420 are binding upon Passport 420 as well as Spring Creek Research, and any entity or individual who claims through Spring Creek Research, including William Parrish.

55.    Upon information and belief, Defendant, William Parrish, claims that payment due under Policy 3 pursuant to the War Risk Coverage Endorsement, if any, shall be made to him individually because he is purportedly the current "acting manager" of Passport 420. Starr Aviation disputes this contention and states that if any said payment is to be made, it is to be made to the owner of the Aircraft which is Passport 420, the named insured under Policy 3, subject to any claims that third parties may have by operation of law or contract.

56.    The plaintiff, Starr Aviation, further asserts that: (a) if the allegations against Michael Avenatti are substantiated, Starr Aviation is entitled to rescind The Policies; (b) that if The Policies, for whatever reason cannot be rescinded but the allegations against Michael Avenatti are substantiated, that one or more conditions, terms or exclusions in The Policies apply, precluding coverage; (c) that if any

21

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

payment is due under The Policies, either because coverage is found to be in order or because The Policies are rescinded and premiums refunded, the sums so paid should be paid into the court registry for determination of how the funds shall be ultimately disbursed.

57.    Wherefore, an actual controversy has arisen and now exists between Starr Aviation on the one hand, and one or more of the defendants, on the other hand. Accordingly, Starr Aviation respectfully requests that a judicial declaration of the rights, duties and obligations of the respective parties under The Policies is necessary and appropriate so that the actual controversy that has arisen may be ended and the parties may proceed without further delay or uncertainty.

## SECOND CLAIM FOR RELIEF

### (Rescission against All Defendants)

58.    Starr Aviation incorporates herein by reference all of the allegations in the paragraphs set forth above as if set forth in full herein.

59.    Under the law, Passport 420 had a duty to communicate all facts within its knowledge that were material to the insurance being requested, and Starr Aviation had the right by law to rely upon the honesty and truthfulness and completeness of the applications submitted by Passport 420 that led to issuance of The Policies.

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

60.    If the allegations of embezzlement and bankruptcy fraud are substantiated, Passport 420 failed to disclose the embezzlement and bankruptcy fraud, when it had a duty to disclose the embezzlement and bankruptcy fraud, such omissions were a material breach of duty by Passport 420, and such omissions were material to the decisions of Starr Aviation to issue The Policies.

61.    The omissions, if substantiated, constituted fraud, deceit and concealment against Starr Aviation which was totally unaware of the scheme of embezzlement and bankruptcy fraud. Starr Aviation justifiably relied to its detriment upon the assumed honesty of Passport 420 when it issued The Policies.

62.    If Starr Aviation had known that the Aircraft, the subject of The Policies being issued, had been purchased, either in whole or in part, with embezzled funds, or that Passport 420 did not properly have title to the aircraft, or that The Policies were purchased with funds arising from bankruptcy fraud, Starr Aviation would not have issued The Policies. The material omissions of Passport 420 precludes all defendants from enforcing any rights they may claim to have otherwise had under The Policies and, moreover, The Policies are void *ab initio.*

63.    The material omissions by Passport 420 cause The Policies to be void by operation of the law of tort, equity and contract, breaches which rightfully suspend any duty of performance on the part of Starr Aviation, which breaches are not curable, and Starr Aviation is entitled to have The Policies declared void.

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

64.     As a direct and proximate cause of the breaches of duty by Passport 420, Starr Aviation respectfully requests that the court enter an order granting full rescission of The Policies from the date of issuance, declaring that all coverages are null and void, and directing the return of premiums paid by Passport 420 be paid into the court registry for distribution to the appropriate claimants.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief - Terms, Conditions and Exclusions Preclude Coverage)

65.     Starr Aviation incorporates herein by reference all of the allegations in the paragraphs set forth above as if set forth in full herein.

66.     Starr Aviation contends and believes that the accusations against Michael Avenatti, if substantiated, triggers the application of certain terms, conditions and exclusions in The Policies, precluding any coverage under the War Risk Coverage Endorsement, or otherwise, even if The Policies are not subject to rescission.

67.     The allegations against Michael Avenatti, if substantiated, triggers application of Exclusion D (found in Section Seven --- Exclusions on Page 31 of The Policies) which state that all insurance provided by The Policies shall not apply to "illegal, criminal or dishonest acts or activities, alleged or otherwise, committed by or at the direction of or with knowledge and consent of directors or officers of the

24

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077  (310) 478-0099 FAX

insured and with the knowledge at the time that such act was illegal or criminal, but with respect to the named insured this exclusion shall apply only if such activities or acts are with the knowledge and consent of an officer or director of the named insured."

68.     The allegations of bankruptcy fraud and embezzlement are allegations of illegal, criminal and dishonest acts and activities, committed on behalf of the named insured, Passport 420, with the knowledge and consent of Michael Avenatti, the manager of Passport 420.  The possession of the Aircraft by the United States of America is a direct result of the alleged illegal, criminal and dishonest acts and activities.

69.     As already noted, the Internal Revenue Service began a collection against Michael Avenatti as early as September 2016, said collection action apparently extending to Avenatti & Associates, a member of Passport 420, the titled owner of the Aircraft, months before the purchase of the Aircraft by Passport 420. Upon information and belief, neither Michael Avenatti or Avenatti & Associates or Passport 420 posted bond or security for payment of taxes being claimed by the Internal Revenue Service, and the possession of the Aircraft by the Internal Revenue Service was the direct result of the failure to provide the require bond or security. The possession of the Aircraft by the Internal Revenue Service was the direct result of a "financial cause."

70.     Upon information and belief, if the allegations of the foregoing paragraph are substantiated, Starr Aviation contends that Exclusion (D) in the War Risk Coverage Endorsement applies: Exclusion (D) states that the War Risk Coverage Endorsement does not cover any loss, damage or expense arising out of "any failure to provide any type of bond, security or other financial cause whether or not required under a court order."

71.     Upon information and belief, the Internal Revenue Service had a lien on the Aircraft, as a result of the failure to pay taxes or to post bond or security for the payment of taxes, resulting in the possession by the Internal Revenue Service of the Aircraft to satisfy that lien. Exclusion (E) of the War Risk Coverage Endorsement states there is no coverage thereunder for any loss, damage or expense arising out of the "repossession or any attempt at repossession by any person or organization having any legal title or lien on the scheduled aircraft or any other type of legal contractual relationship with the insured."

72.     Starr Aviation requests the entry of a court order declaring that one or more, or all, of these exclusions apply, or that one or more other exclusions, terms and conditions in The Policies apply, and that no insurance or coverages are available under The Policies as a result of the illegal, criminal and dishonest acts and activities, the possession of the Aircraft by the United States of America because of the illegal, criminal and dishonest acts and actions, the possession of the

26

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

Aircraft by the Internal Revenue Service as a result of its tax lien, and the failure to

provide a bond or security for the payment of taxes, and because the possession of

the Aircraft was the direct result of a financial cause arising from the failure to pay

financial obligations.

## FOURTH CLAIM FOR RELIEF

### (Interpleader)

73.     Starr Aviation incorporates herein by reference all of the allegations in the

paragraphs set forth above as if set forth in full herein.

74.     Should the court determine that coverage is in order, and The Policies

are not subject to rescission, Starr Aviation requests pursuant to Federal Rules of

Civil Procedure, Rule 22 that the court enter an order authorizing Starr Aviation to

deposit in the court registry those sums due and payable under the War Risk

Coverage Endorsement, so that the court may determine which defendants have an

interest in said payment and thereafter direct how payment is to be made to any

defendant, and the amount of payment. Alternatively, should the court conclude that

rescission is appropriate Starr Aviation requests the court to enter an order

authorizing Starr Aviation to deposit in the court registry the returned premiums on

The Policies, so that the court may thereafter determine how the returned premiums

are to be disbursed and to which defendant or defendants.

27

WHEREFORE, Starr Aviation prays for judgment as follows:

## **FIRST CLAIM FOR RELIEF**

1.  For an Order determining that if the allegations against Michael Avenatti are substantiated, Starr Aviation is entitled to rescind The Policies;

2.  In the alternative, for an order determining that if The Policies, for whatever reason cannot be rescinded but the allegations against Michael Avenatti are substantiated, that one or more conditions, terms or exclusions in The Policies apply, precluding coverage;

3.  In the alternative, for an order determining that if any payment is due under The Policies, either because coverage is found to be in order or because The Policies are rescinded and premiums refunded, the sums so paid should be paid into the court registry for determination of how the funds shall be ultimately disbursed.

## **SECOND CLAIM FOR RELIEF**

1.  For an Order granting full rescission of The Policies from the date of issuance, and declaring all coverages null and void.

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077  (310) 478-0099 FAX

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY
RELIEF, RESCISSION AND INTERPLEADER

**THIRD CLAIM FOR RELIEF**

1.  For an Order declaring that no coverage rights exist by operation of law and under the terms, conditions and exclusions of The Policies.

**FOURTH CLAIM FOR RELIEF**

1.  In the alternative, for an order authorizing payment into the Court Registry of any sums due or premiums to be refunded;

2.  For an award of attorney fees.

**AS TO ALL CLAIMS FOR RELIEF**

1.  As to all Claims, all such relief as the court may deem appropriate and necessary.

Dated: September ___, 2019

THE CLARK LAW GROUP

By: _____
ROGER W. CLARK
ROBERT D. GOLDBERG
Attorneys for Plaintiff **STARR INDEMNITY AND LIABILITY COMPANY**

///

///

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077    (310) 478-0099 FAX

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND INTERPLEADER

## DEMAND FOR JURY TRIAL

Plaintiff Starr Aviation hereby requests trial by jury in the above caption action.

DATED: September ___, 2019          **THE CLARK LAW GROUP**


By: _____
ROGER W. CLARK
ROBERT D. GOLDBERG
Attorneys for Plaintiff **STARR
INDEMNITY AND LIABILITY
COMPANY**

THE CLARK LAW GROUP
ATTORNEYS AT LAW
11355 W. OLYMPIC BOULEVARD, SUITE 303
LOS ANGELES, CALIFORNIA 90064
(310) 478-0077   (310) 478-0099 FAX

C:\Users\CLARKADMIN\SyncedFolder\Share\data\AAA WORK\19-1915\PLEADINGS\Declaratory Relief 011.doc

30

PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY'S COMPLAINT FOR DECLARATORY
RELIEF, RESCISSION AND INTERPLEADER