Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Damon Rogers, Esq. (SBN 263853)
DR@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Defendant/Cross-Claimant
Alexis Gardner

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, a Texas Corporation <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. AVENATTI, an individual and citizen of California; PASSPORT 420, LLC, a Delaware limited liability company; WILLIAM PARRISH, an individual and citizen of California; SPRING CREEK RESEARCH, LLC, a California limited liability company; ALEXIS GARDNER, an individual and citizen of Georgia; and the UNITED STATES OF AMERICA; and DOES 1 to 25, inclusive <br><br> Defendants. | Case No. 8:19-CV-01704-DOC-JDE <br><br> **CROSSCLAIM** <br><br> **JURY TRIAL DEMANDED** |
| ALEXIS GARDNER, an individual and citizen of Georgia | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cross-Claimant,

v.

STARR INDEMNITY & LIABILITY COMPANY, a Texas Corporation; PASSPORT 420, LLC, a Delaware limited liability company; WILLIAM PARRISH, an individual and citizen of California; SPRING CREEK RESEARCH, LLC, a California limited liability company; Avenatti & Associates, APC, a California professional corporation; and the UNITED STATES OF AMERICA

Cross-Defendants.

**CROSSCLAIM**

**INTRODUCTION**

1.     Defendant/Cross-Claimant Alexis Gardner ("Cross-Claimant" or "Gardner") brings this Cross-Complaint against Plaintiff/Cross-Defendant Starr Indemnity & Liability Company ("Starr"), Defendant/Cross-Defendant Passport 420, LLC ("Passport 420"), Defendant/Cross-Defendant William Parrish ("Parrish"), Defendant/Cross-Defendant Spring Creek Research, LLC, Defendant/Cross-Defendant Avenatti & Associates, APC ("AA"), and Defendant/Cross-Defendant The United States of America.

2.     This Cross-Complaint arises out of the misappropriation of $2,500,000 belonging to Ms. Gardner, by her attorney Michael Avenatti, for the benefit of Passport 420 as funds to purchase a jet.

3.     The jet in question, a Honda Aircraft Co. LLC HA-420 jet, serial number 42000029, and with tail number N227WP, shall be hereinafter referred to as the "Subject Aircraft".

**PARTIES**

4.     Defendant/Cross-Claimant Alexis Gardner "Gardner" is a resident and citizen of the State of Georgia.

5.     Plaintiff/Cross-Defendant Starr Indemnity & Liability Company ("Starr") is a Texas corporation with its principal place of business in New York.

6.     Defendant/Cross-Defendant Passport 420, LLC ("Passport 420") is a Delaware limited liability company.  Its principal place of business, as listed on the FAA registry, is 520 Newport Center Dr, Ste 1400, Newport Beach, California.

7.     On information and belief, the two members of Passport 420, at the time of its formation in 2016 and at the time it purchased the Subject Aircraft with money of Gardner, were Spring Creek Research, LLC and Avenatti & Associates, APC.

8.     Avenatti served as Passport 420's manager during all relevant time periods.

**CROSSCLAIM**

9.    Defendant/Cross-Defendant William Parrish ("Parrish") is citizen of the State of California and resident of Santa Barbara County, California.  Parrish became the manager of Passport 420 in 2018.

10.    Defendant/Cross-Defendant Spring Creek Research, LLC ("Spring Creek") is a California limited liability company with its principal place of business in Santa Barbara County, California.  Spring Creek is owned by Parrish.

11.    Defendant/Cross-Defendant Avenatti & Associates, APC ("AA") is a California professional corporation with its principal place of business within this judicial district.  AA was owned and controlled by Avenatti when he served as Gardner's attorney and, unbeknownst to her, misappropriated her money so that Passport 420 could purchase a plane.

12.    Defendant/Cross-Defendant The United States of America has seized the Subject Aircraft and filed a civil forfeiture complaint against it.

13.    Starr, Passport 420, Parrish, Spring Creek, AA, and the United States of America shall be collectively referred to as "Cross-Defendants."

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over Plaintiff's claims because they are so related to the claims in Starr's Complaint as to form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).  In addition, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because no defendant is a citizen of the same state as any plaintiff and because the amount in controversy exceeds $75,000, exclusive of interest and costs.  Finally, this Court also has subject matter jurisdiction over Plaintiff's federal claims for relief under 18 U.S.C. §1961 et seq pursuant to 28 § 1331 and over Plaintiff's state law claims, because they are so related to her federal law claims as to form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

15.    Venue is proper pursuant to 28 U.S.C.  § 1391(b) & (c) because a

4

substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Cross-Defendants are subject to the Court's personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

### I.  Avenatti's Criminal Enterprise.

16.     Eagan Avenatti, LLP ("EA") was a well-regarded plaintiffs' law firm that obtained significant jury verdicts and settlements for its clients in high profile, high stakes litigation.  For example, in 2014 it settled a class action against a cemetery for more than $80 million.  In 2017 it obtained a $454 million jury verdict in another consumer class action, the largest jury verdict that year in the State of California and the third largest in the United States.  However, under this veneer of prestige and success, there was a darker truth: EA's managing Partner, Michael Avenatti, was embezzling millions of dollars in settlement money from his clients.

17.     Unbeknownst to everyone, EA was simultaneously run by Avenatti as a legitimate law firm and a means to enrich himself through criminal activity. Avenatti's modus operandi was to use the skill and expertise of the attorneys and staff employed at EA to obtain significant settlements on behalf of his clients.  Then, once the case was in the process of settling, he would create two parallel settlement agreements.  The first, which was the one the opposing party actually signed and was the "real" settlement agreement, would provide for one lump sum payment. The second agreement, which would be provided to or explained orally to the client, would change the payment terms so that it appeared that the defendant would be making periodic payments to the plaintiff, Avenatti's client.

18.     Under the terms of the "real" settlement agreements, the defendant would be required to send the lump sum payment check to EA, where he would deposit the money in a client trust account.  However, rather than deduct his contingent fee percentage from the lump sum and remit the balance to the client, as

he was obligated to, Avenatti instead turned these client trust accounts into his personal piggy banks and spent on personal matters the portions of the settlement funds that rightfully belonged to his clients.  Avenatti would then send deminimus periodic payments to his clients as provided for in the fake settlement agreements. He would often cease to even make these payments and would then pretend that the defendant was being difficult and not making the "required" periodic payment.  He would pretend to assist his clients in getting the defendants to restart making their payments.   Of course, as Avenatti knew, the defendants had already paid the settlement in full and had no further obligations to make additional payments.

19.    Through this pattern of conduct, Avenatti was able to lull clients into believing that he was representing their interests for a number of years even as he deprived them of their settlements.  Given the forged settlement agreements, the plausible explanations he provided to his clients for why they were not receiving their settlement money, and EA's continued success in litigating high profile cases, clients had no reason to realize that their money had in fact been stolen by their attorney.  In addition, because Avenatti handled settlement negotiations by himself and only involved one paralegal, who served as both the firm's office manager and bookkeeper, in his criminal scheme, all of the other attorneys and staff at EA remained ignorant of his wrongdoing up until March 2019, when he was arrested for his crimes and subsequently indicted.

## II.   __Passport 420 Purchases a Jet with Gardner's Money.__

20.    In 2016 Parrish and Avenatti decided to jointly purchase a  private jet and created Passport 420 to own it.  Avenatti was selected as the manager of Passport 420.

21.    On or about January 7, 2017 Gardner, one of Avenatti and EA's clients, entered into a confidential settlement agreement with another individual (the

"Individual").[1]

22.    Avenatti did not provide Gardner with a copy of the actual settlement agreement.  Instead, he falsely represented to Gardner that the Individual would make two separate transactions in fulfillment of the settlement agreement. First, the Individual would make approximately 96 monthly payments to Gardner over the course of the next eight years. Second, at some point within the first year, the Individual would make a lump-sum payment, the entirety of which would be used to pay EA's attorney fees and costs.

23.    Under the terms of the actual settlement agreement, this Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment of $250,000 at a later date, set for the fall of 2020.

24.    On or about January 25, 2017, unbeknownst to Gardner, the Individual made the first single initial $2,750,000 settlement payment to EA Trust Account 8671 to be held in trust for Gardner.  Avenatti concealed and failed to disclose to Gardner that EA had received this initial $2,750,000 settlement payment.  Neither Avenatti nor EA ever transferred any of Gardner's settlement payment to her, nor did they obtain her permission to divert the funds anywhere else.

25.    On or about January 26, 2017, Avenatti caused $2,500,000 of Gardner's funds to be transferred to Honda Aircraft Company, LLC so that Passport 420, the company he was running as its manager, could purchase the Subject Aircraft. According to the invoice from Honda Aircraft Company, LLC, the total price of the the Subject Aircraft was $4,363,605.

26.    Avenatti also moved the remaining $250,000 of the settlement payment

---

[1] To be clear, neither the identity of the Individual, nor the nature of the settlement agreement have any relevance to Gardner's claims here.  Neither the Individual nor the Individual's counsel were aware of or participated in Avenatti's wrongdoing.

7

**CROSSCLAIM**

1  out of the trust account and into another EA account, before it was moved to an AA

2  account.

3       27.   Between March 2017 and June 2018 Avenatti caused approximately 11

4  payments to be deposited into Gardner's account, which he represented to Gardner

5  as being the monthly settlement payments from the Individual.  These payments

6  were not made using money from the settlement payment intended for Gardner,

7  however.  For example, some of the payments were made using money from Global

8  Baristas US LLC and/or its owner Global Baristas, LLC, including credit card

9  receipts from Tullly's stores.  From June 2018 until March 2019, Avenatti stopped

10 making these payments and instead falsely represented to Gardner that Avenatti was

11 working to obtain the missing monthly settlement payments.  To accomplish this,

12 Avenatti spoke to Gardner by phone, as he had on a number of occasions previously,

13 in order to convince her that she was in fact supposed to receive monthly periodic

14 payments.

15

16 **III.  Gardner's Damages.**

17       28.   As was discussed above, Gardner never received any money from the

18 $2,750,000 settlement payment that was supposed to be made to her because it was

19 instead taken by Avenatti, with $2,500,000 spent by Passport 420 in the course of

20 purchasing its jet and the other $250,000 taken by Avenatti, AA and/or EA and used

21 for presently unknown purposes, but possibly for the further benefit of Passport 420.

22 The periodic payments Gardner received from Avenatti should not be treated as an

23 offset to the full amount owed because the money did not come from her settlement

24 funds.  Further, because of the severe ethical misconduct of Avenatti and his law

25 firms, Gardner is entitled to one hundred percent of the settlement funds as damages

26 without any contingent fee deduction.   In addition, Gardner is entitled to

27 prejudgment interest and punitive damages.

28       29.   Further, to the extent that Gardner is granted relief in the form of a

constructive trust providing her with an ownership interest in the Subject Aircraft, her percentage ownership interest should be calculated using the current price the plane would be sold for, not the price paid by Passport 420. Additionally, the amount of money that was taken from her to purchase the plane should include interest on this amount.

30.    While Parrish, Spring Creek, Avenatti, AA, EA and any and all other parties with a claimed interest in Passport 420 assumed the risk of the plane depreciating over time, Gardner did not. On information and belief, based on the price that similar used jets sell and the amount of Gardner's money that was used by Passport 420 to purchase the jet plus interest on that money, the current value of the Subject Aircraft is about the same as Gardner's compensatory damages and Gardner should be awarded a 100% ownership interest in the Subject Aircraft.

31.    Gardner is not required to elect among the different remedies available to her at this time and intends to pursue each and every remedy through trial.

**IV.  The Insurance Coverage Dispute.**

32.    The allegations of this section are alleged on information and belief based upon the allegations Starr makes in its Complaint.

33.    On information and belief, Starr issued a Starr Elite Comprehensive Corporate Aircraft Policy to Passport 420, Policy Number 1000320046-01 with effective dates from January 26, 2017 until January 26, 28018 ("Policy 1"). Policy 1 was issued pursuant to an "Aircraft Insurance Application" submitted by applicant Passport 420.

34.    On information and belief, Starr issued a Starr Elite Comprehensive Corporate Aircraft Policy to Passport 420, Policy Number 1000320046-02 with effective dates from January 26, 2018 until January 26, 2019 ("Policy 2"). Policy 2 was issued pursuant to an "Aircraft Insurance Application" submitted by applicant Passport 420

35.    On information and belief, Starr issued a Starr Elite Comprehensive Corporate Aircraft Policy to Passport 420, Policy Number 1000320046-03 with effective dates from January 26, 2019 until January 26, 2020 ("Policy 3"). Policy 3 was issued pursuant to an "Aircraft Insurance Application" submitted by applicant Passport 420.

36.    Policy 1, Policy 2, and Policy 3 will be referred to collectively as "the Policies."

37.    Each of the Policies scheduled as an insured aircraft the Subject Aircraft, providing certain coverages pursuant to the terms, conditions, exclusions and languages of the Policies.

38.    As was stated above, Passport 420 purchased the Subject Aircraft using Gardner's money.

39.    Further, as was stated above, because Gardner's money was used by Passport 420 to purchase the Subject Aircraft, Gardner has a substantial ownership interest in it.

40.    On information and belief, based on the lawsuit Passport 420 LLC v. Starr Indemnity & Liability Company, Santa Barbara Superior Court Case Number 19CV93596, Parrish is claiming that any proceeds that might come due under the Policies shall be paid to him individually, or to Spring Creek Research, or the Parrish Family Trust date 1997, rather than to Passport 420, the ostensibly titled owner of the Subject Aircraft or Gardner.

41.    Avenatti & Associates, APC is the other member of Passport 420 and, on information and belief, may attempt to assert that it has an ownership interest in the Subject Aircraft as a basis for seeking any insurance payment from the Policies.

42.    The United States of America has filed a criminal indictment against Avenatti in this District, alleging that it is seeking forfeiture as part of any sentence in the event of Avenatti's conviction of all right, title, and interest in the property derived from any proceeds obtained directly or indirectly as a result of any offense

10

or property traceable to such proceeds.  On April 10, 2019 the IRS took possession of the Subject Aircraft.

43.    On information and belief, the United States of America, through the Internal Revenue Service, has taken possession of the Subject Aircraft for security for payment of certain taxes that are allegedly due and unpaid; or alternatively, the Internal Revenue Service claims that certain taxes are due and unpaid and the Subject Aircraft may serve as security for payment of some or all of those taxes. Upon information and belief, the United States of America may claim some interest in the Policies.

44.    On October 18, 2019, the United States of America filed a civil forfeiture complaint pertaining to the Subject Aircraft.

45.    After the Subject Aircraft was seized on April 10, 2019, Parrish filed with Starr a "Proof of Claim" requesting that Starr issue to him in his individual capacity a payment for the taking of the Subject Aircraft under Endorsement 10 of Policy 3, titled Extended Coverage Endorsement: War Risk For Physical Damage Coverage, Extortion, and Hi-Jacking Extra Expense Coverage (sometimes "War Risk Coverage Endorsement"). The demand has been made even though William Parrish is not the owner of the Subject Aircraft and payment should be directed instead to those with an ownership interest in the Subject Aircraft.

46.    The term "Physical Damage" is defined by the Policies to mean "accidental, direct physical loss of or damage to scheduled aircraft, spare engines or spare parts during the policy period including ingestion, but it does not include the loss of use or any residual depreciation in value either before or after any repairs have been made."

47.    The Subject Aircraft has an agreed-upon value in Policy 3 stated at $4,000,000.00.

48.    Exclusion D of The Policies (set forth in Section Seven - Exclusions on

11

**CROSSCLAIM**

Page 31 of The Policies) state: "The insurance provided by the Policy shall not apply: to illegal, criminal or dishonest acts or activities, alleged or otherwise, committed by or at the direction of or with the knowledge and consent of directors or officers of the insured and with the knowledge at the time that such act was illegal or criminal, but with respect to the named insured this exclusion shall apply only if such activities or acts are with the knowledge and consent of an officer or director of the named insured."

49.    Pursuant to the War Risk Coverage Endorsement the coverage provided therein will not cover any loss, damage or expense arising out of the "repossession or any attempt at repossession by any person or organization having any legal title or lien on the scheduled aircraft or any other type of legal contractual relationship with the insured."

50.    Pursuant to the War Risk Coverage Endorsement the coverage provided therein will not cover any loss, damage or expense arising out of "any failure to provide any type of bond, security or any other financial cause whether or not required under a court order." (Page 2 of the War Risk Coverage Endorsement, Exclusion (D)).

**FIRST CLAIM FOR RELIEF**
**DECLARATORY RELIEF REGARDING OWNERSHIP OF THE SUBJECT AIRCRAFT**
**(Against Cross-Defendants Passport 420, Parrish, Spring Creek Research, AA, and the United States of America)**

51.    The allegations of paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

52.    Upon information and belief Passport 420, Parrish, Spring Creek Research, Passport 420, Parrish, Spring Creek Research, AA, and the United States

12

of America all believe that they are entitled to an ownership interest in the Subject Aircraft and that Gardner is not entitled to an ownership interest in the Subject Aircraft.

53.    Gardner contends that because $2,500,000 of money undisputedly belonging to her was used by Passport 420 to purchase the Subject Aircraft, there is a constructive trust providing her with a majority ownership interest in the HondaJet HA-420.  Further, her percentage ownership interest should be calculated using the current price the plane would be sold for, not the price paid by Passport 420.  The amount of money that was taken from Gardner to purchase the plane should additionally include interest on this amount at the maximum rate permitted by law. While Parrish, Spring Creek, and all others claiming an interest in Passport 420 assumed the risk of the plane depreciating over time, Gardner did not.    On information and belief, based on the price that similar used jets and the amount of Gardner's money that was used by Passport 420 to purchase the jet plus interest on that money, Gardner should be awarded a 100% ownership interest in the Subject Aircraft.

54.    Accordingly, an actual controversy has arisen and now exists between Gardner and Passport 420, Parrish, Spring Creek Research, Passport 420, Parrish, Spring Creek Research, AA, and the United States of America, for which Gardner seeks a declaration of rights.

## SECOND CLAIM FOR RELIEF
## DECLARATORY RELIEF REGARDING INSURANCE POLICIES
### (Against All Cross-Defendants)

55.    The allegations of paragraphs 1 through 54 are re-alleged and incorporated herein by reference.

56.    Upon information and belief, based on the allegations in its complaint, Starr contends that it is either entitled to rescind the Policies or otherwise not pay

13

out a claim under the Policies as a result of the Subject Aircraft's seizure by the United States of America.

57.    Further, on information and belief, Parrish, Spring Creek Research, Passport 420, Parrish, Spring Creek Research, AA, and the United States of America all assert they are entitled to any insurance payment made by Starr pursuant to the Policies and any the proceeds resulting from the return of premiums for the Policies if they are rescinded.

58.    Gardner contends that because $2,500,000 of her money was used by Passport 420 to purchase the Subject Aircraft, there is a constructive trust providing her with an ownership interest in the Subject Aircraft.  Further, her percentage ownership interest should be calculated using the current price the plane would be sold for, not the price paid by Passport 420.  The amount of money that was taken from her to purchase the plane should additionally include interest on this amount. While Parrish, Spring Creek, and all others claiming interest in Passport 420 assumed the risk of the plane depreciating over time, Gardner did not.   On information and belief, based on the price that similar used jets sell and the amount of Gardner's money that was used by Passport 420 to purchase the jet plus interest on that money, Gardner should be awarded a 100% ownership interest in the Subject Aircraft.

59.    Because Gardner has an ownership interest in the Subject Aircraft, it follows that if an insurance payment is made pursuant to the Policies or if the Policies are rescinded and the premiums returned, some or all of this money belongs to her.

60.    Accordingly, an actual controversy has arisen and now exists between Gardner and Starr, Passport 420, Parrish, Spring Creek Research, Passport 420, Parrish, Spring Creek Research, AA, and the United States of America, for which Gardner seeks a declaration of rights.

**CROSSCLAIM**

## THIRD CLAIM FOR RELIEF

## UNJUST ENRICHMENT/RESTITUTIONARY DISGORGEMENT

### (Against Passport 420)

61.    The allegations of paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

62.    Passport 420 received a benefit in the form of the $2,500,000 payment towards the purchase of the Subject Aircraft that was made from the proceeds of Gardner's settlement.

63.    It would be unjust for Passport 420 to retain the money taken out of the settlement funds of Gardner.

64.    Passport 420's conduct was a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

65.    A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

66.    Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights, and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

67.    Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

68.    Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

69.    Therefore, Passport 420, acting through its managers, including Avenatti,  acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

15

## FOURTH CLAIM FOR RELIEF

## AIDING AND ABETTING CONVERSION

(Against Passport 420)

70. The allegations of paragraphs 1 through 69 are re-alleged and incorporated herein by reference.

71. Avenatti and EA received Gardner's settlement money in a client trust account.

72. Avenatti and EA intentionally and substantially interfered with Gardner's settlement money by embezzling it and causing the settlement money to be used to purchase the Subject Aircraft for the benefit of Passport 420.

73. Gardner did not consent to any of this.

74. Because its manager was Avenatti, Passport 420 knew that Avenatti and EA were converting and/or going to convert Gardner's settlement money.

75. Passport 420 gave substantial assistance and/or encouragement to Avenatti and EA. Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420. Avenatti was then able to use the Aircraft for his own benefit.

76. These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

77. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

78. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

79. Passport 420, acting through its manager Avenatti, engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard

16

of her rights, which constitutes Oppression.

80. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft. This constitutes fraud.

81. Therefore, Passport 420, acting through its managers, including Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## FIFTH CLAIM FOR RELIEF
## CONSPIRACY TO COMMIT CONVERSION

(Against Passport 420)

82. The allegations of paragraphs 1 through 81 are re-alleged and incorporated herein by reference.

83. Avenatti and EA received Gardner's settlement money in a client trust account.

84. Avenatti and EA intentionally and substantially interfered with Gardner's settlement money by embezzling it and causing the settlement money to be used to purchase the Subject Aircraft for the benefit of Passport 420.

85. Gardner did not consent to any of this.

86. Because its manager was Avenatti, Passport 420 knew that Avenatti and EA were converting and/or going to convert Gardner's settlement money for the benefit of Passport 420.

87. Passport 420 agreed with Avenatti and EA and intended that Avenatti and EA make affirmative misrepresentations to Gardner. Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420. Avenatti was then able to use the Aircraft for his own benefit.

17

88.   These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

89.   A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

90.   Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took Gardner's monies and used them  to purchase the Subject Aircraft, which constitutes malice.

91.   Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

92.   Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

93.   Therefore, Passport 420, acting through its manager Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## SIXTH CLAIM FOR RELIEF
## RECEIVING STOLEN PROPERTY (PENAL CODE § 496)
### (Against Passport 420)

94.   The allegations of paragraphs 1 through 93 are re-alleged and incorporated herein by reference.

95.   Avenatti and EA received Gardner's settlement money in a client trust account.

96.   Avenatti and EA embezzled the settlement money and caused some of the settlement money to be used so that Passport 420 could purchase the Subject

18

Aircraft.

97. Passport 420 therefore either bought or received stolen property or concealed, withheld, or aided in concealing or withholding Gardner's settlement money.

98. Because its manager was Avenatti, Passport 420 knew that the settlement money was stolen and belonged to Gardner.

99. These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages. Under Penal Code § 496 these damages are three times the amount of actual damages.

100. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

101. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

102. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

103. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft. This constitutes fraud.

104. Therefore, Passport 420, acting through its manager Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

//
//

**CROSSCLAIM**

**SEVENTH CLAIM FOR RELIEF**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**(Against Passport 420)**

105. The allegations of paragraphs 1 through 104 are re-alleged and incorporated herein by reference.

106. Avenatti and EA owed Gardner a fiduciary duty because they were in an attorney-client relationship with Gardner. Their fiduciary duty required them to follow the California Rules of Professional Conduct and other authorities regulating attorney behavior.

107. These ethical duties include, but are not limited to, Former California Rules of Professional Conduct Rule 4-100's rules governing trust funds and notifying clients of receipt of client funds. Specifically, Avenatti and EA failed to notify Gardner of receipt of the settlement money, failed to hold the settlement money in a trust account until disbursed to Gardner, and failed to obtain Gardner's permission and authorization for the movement and disbursement of the funds.

108. In pursuing their own interest of single minded avarice by seizing Gardner's settlement funds, which did not belong to them, and by putting that interest ahead of Gardner's interest, Avenatti and EA also violated their fiduciary duty of loyalty that all attorneys owe to their clients.

109. Because its manager was Avenatti, Passport 420 knew that Avenatti and EA were breaching and/or going to breach their fiduciary duties owed to Gardner.

110. Passport 420 gave substantial assistance and/or encouragement to Avenatti and EA. Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420. Avenatti was then able to use the Aircraft for his own benefit.

111. These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

20

**CROSSCLAIM**

112. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

113. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

114. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

115. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

116. Therefore, Passport 420, acting through its manager Avenatti,  acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## EIGHTH CLAIM FOR RELIEF
## AIDING AND ABETTING PROFESSIONAL MALPRACTICE
### (Against Passport 420)

117. The allegations of paragraphs 1 through 116 are re-alleged and incorporated herein by reference.

118.  Avenatti and EA were in attorney-client relationships with Gardner.

119.  Accordingly, Avenatti and EA owed Gardner the duty of all attorneys to use such skill, prudence, and diligence as members of their profession commonly possess and exercise.

120.  In addition, Avenatti and EA are required to comply with their ethical duties as attorneys.  These ethical duties include, but are not limited to, Former

21

California Rules of Professional Conduct Rule 4-100's rules governing trust funds and notifying clients of receipt of client funds. Specifically, Avenatti and EA failed to notify Gardner of receipt of the settlement money, failed to hold the settlement money in a trust account until disbursed to Gardner, and failed to obtain Gardner's permission and authorization for the movement and disbursement of the funds.

121. Because its manager was Avenatti, Passport 420 knew that Avenatti and EA were committing and/or going to commit legal malpractice against their client Gardner.

122. Passport 420 gave substantial assistance and/or encouragement to Avenatti and EA. Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420. Avenatti was then able to use the Aircraft for his own benefit.

123. These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

124. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

125. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

126. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

127. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft. This constitutes fraud.

128. Therefore, Passport 420, acting through its manager Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

### NINTH CLAIM FOR RELIEF
### AIDING AND ABETTING AFFIRMATIVE MISREPRESENTATION
### (Against Passport 420)

129. The allegations of paragraphs 1 through 128 are re-alleged and incorporated herein by reference.

130. Avenatti and EA represented to Gardner that Avenatti would serve as Gardner's attorney and that Avenatti and EA would provide her with legal services. Implicit was the representation that Avenatti and EA would represent Gardner's interests, uphold the fiduciary duties owed to her, and comply with the California Rules of Professional Conduct.

131. Avenatti and EA's representations were false. Instead of representing Gardner's interests, they were only concerned with their own: namely taking Gardner's settlement funds so that Passport 420 could use the money to purchase a plane.

132. Both before and after Avenatti and EA embezzled Gardner's settlement, they made additional representations that the settlement provided for 96 monthly payments to Gardner over the course of the eight years following the mediation. They also represented that the monthly payments that they were making to Gardner were actually from the Individual and that, once they ceased making these payments, the reason why the payments had stopped was because the Individual had stopped making them.

133. These representations were false as well. In fact, under the terms of the settlement agreement, the Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment, at

23

a later date in 2020, of $250,000.  The monthly payments were actually being made by Avenatti and EA to maintain the façade that the Individual was making the monthly payments.  This allowed them to take the settlement money from Gardner without her realizing what was occurring.  Similarly, when the monthly payments stopped, their explanation was false as well, but was once again intended to hide the truth from Gardner.

134.  Avenatti and EA either knew that their representations were false when they made them or made the representations recklessly and without regard for their truth.

135.  Avenatti and EA intended that Gardner rely on the representations.

136.  Gardner reasonably relied on Avenatti and EA's representations.

137.  Passport 420 knew that Avenatti and EA were making and/or going to make affirmative misrepresentations to Gardner by virtue of the fact that it was managed by Avenatti.

138.  Passport 420 gave substantial assistance and/or encouragement  to Avenatti and EA.  Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420.  Avenatti was then able to use the Aircraft for his own benefit.

139.  These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

140. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

141. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

142. Passport 420, acting through its manager Avenatti engaged in despicable

24

conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

143. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

144. Therefore, Passport 420, acting through its manager Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## TENTH CLAIM FOR RELIEF
## CONSPIRACY TO COMMIT AFFIRMATIVE MISREPRESENTATION
### (Against Passport 420)

145. The allegations of paragraphs 1 through 144 are re-alleged and incorporated herein by reference.

146. Avenatti and EA represented to Gardner that Avenatti would serve as Gardner's attorney and that Avenatti and EA would provide her with legal services. Implicit was the representation that Avenatti and EA would represent Gardner's interests, uphold the fiduciary duties owed to her, and comply with the California Rules of Professional Conduct.

147. Avenatti and EA's representations were false.  Instead of representing Gardner's interests, they were only concerned with their own: namely taking Gardner's settlement funds so that Passport 420 could use the money to purchase a plane.

148. Both before and after Avenatti and EA embezzled Gardner's settlement, they made additional representations that the settlement provided for 96 monthly payments to Gardner over the course of the eight years following the mediation. They also represented that the monthly payments that they were making to Gardner

25

were actually from the Individual and that, once they ceased making these payments, the reason why the payments had stopped was because the Individual had stopped making them.

149.  These representations were false as well.  In fact, under the terms of the settlement agreement, the Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment, at a later date in 2020, of $250,000.  The monthly payments were actually being made by Avenatti and EA to maintain the façade that the Individual was making the monthly payments.  This allowed them to take the settlement money from Gardner without her realizing what was occurring.  Similarly, when the monthly payments stopped, their explanation was false as well, but was once again intended to hide the truth from Gardner.

150.  Avenatti and EA either knew that their representations were false when they made them or made the representations recklessly and without regard for their truth.

151.  Avenatti and EA intended that Gardner rely on the representations.

152.  Gardner reasonably relied on Avenatti and EA's representations.

153.  Passport 420 knew that Avenatti and EA were making and/or going to make affirmative misrepresentations to Gardner by virtue of the fact that Avenatti served as Passport 420's manager.

154.  Passport 420 agreed with Avenatti and EA and intended that Avenatti and EA make affirmative misrepresentations to Gardner.  Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420.  Avenatti was then able to use the Aircraft for his own benefit.

155.  These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

156. A constructive trust must be imposed that would provide Gardner with

26

an ownership interest in the Subject Aircraft.

157. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

158. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

159. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

160. Therefore, Passport 420, acting through its manager Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF
## AIDING AND ABETTING NEGLIGENT MISREPRESENTATION
### (Against Passport 420)

161. The allegations of paragraphs 1 through 160 are re-alleged and incorporated herein by reference.

162. Avenatti and EA represented to Gardner that Avenatti would serve as Gardner's attorney and that Avenatti and EA would provide her with legal services. Implicit was the representation that Avenatti and EA would represent Gardner's interests, uphold the fiduciary duties owed to her, and comply with the California Rules of Professional Conduct.

163. Avenatti and EA's representations were false.  Instead of representing Gardner's interests, they were only concerned with their own: namely taking

27

Gardner's settlement funds so that Passport 420 could use the money to purchase the Subject Airplane.

164.  Both before and after Avenatti and EA embezzled Gardner's settlement, they made additional representations that the settlement provided for 96 monthly payments to Gardner over the course of the eight years following the mediation. They also represented that the monthly payments that they were making to Gardner were actually from the Individual and that, once they ceased making these payments, the reason why the payments had stopped was because the Individual had stopped making them.

165.  These representations were false as well.  In fact, under the terms of the settlement agreement, the Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment, at a later date in 2020, of $250,000.  The monthly payments were actually being made by Avenatti and EA to maintain the façade that the Individual was making the monthly payments.  This allowed them to take the settlement money from Gardner without her realizing what was occurring.  Similarly, when the monthly payments stopped, their explanation was false as well, but was once again intended to hide the truth from Gardner.

166. Regardless of whether Avenatti and EA honestly believed that the representations were true, Avenatti and EA had no reasonable grounds for believing the representations were true when they made them.

167.  Avenatti and EA intended that Gardner rely on these representations.

168.  Gardner reasonably relied on Avenatti and EA's representations.

169.  Passport 420 knew that Avenatti and EA were making and/or going to make negligent misrepresentations to Gardner by virtue of the fact that Passport 420 was managed by Avenatti.

170.  Passport 420 gave substantial assistance and/or encouragement  to Avenatti and EA.  Among other things, Avenatti and EA were able to hide Gardner's

funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420.  Avenatti was then able to use the Aircraft for his own benefit.

171.  These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

172. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

173. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

174. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

175. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

176. Therefore, Passport 420, acting through its manager Avenatti,  acted with oppression,  fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## TWELFTH CLAIM FOR RELIEF
## CONSPIRACY TO COMMIT NEGLIGENT MISREPRESENTATION
### (Against Passport 420)

177. The allegations of paragraphs 1 through 176 are re-alleged and incorporated herein by reference.

178.  Avenatti and EA represented to Gardner that Avenatti would serve as

29

**CROSSCLAIM**

Gardner's attorney and that Avenatti and EA would provide her with legal services. Implicit was the representation that Avenatti and EA would represent Gardner's interests, uphold the fiduciary duties owed to her, and comply with the California Rules of Professional Conduct.

179.  Avenatti and EA's representations were false.  Instead of representing Gardner's interests, they were only concerned with their own: namely taking Gardner's settlement funds so that Passport 420 could use the money to purchase the Subject Aircraft.

180.  Both before and after Avenatti and EA embezzled Gardner's settlement, they made additional representations that the settlement provided for 96 monthly payments to Gardner over the course of the eight years following the mediation. They also represented that the monthly payments that they were making to Gardner were actually from the Individual and that, once they ceased making these payments, the reason why the payments had stopped was because the Individual had stopped making them.

181.  These representations were false as well.  In fact, under the terms of the settlement agreement, the Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment, at a later date in 2020, of $250,000.  The monthly payments were actually being made by Avenatti and EA to maintain the façade that the Individual was making the monthly payments.  This allowed them to take the settlement money from Gardner without her realizing what was occurring.  Similarly, when the monthly payments stopped, their explanation was false as well, but was once again intended to hide the truth from Gardner.

182. Regardless of whether Avenatti and EA honestly believed that the representations were true, Avenatti and EA had no reasonable grounds for believing the representations were true when they made them.

183.  Avenatti and EA intended that Gardner rely on these representations.

**CROSSCLAIM**

184.  Gardner reasonably relied on Avenatti and EA's representations.

185.  Passport 420 knew that Avenatti and EA were making and/or going to make negligent misrepresentations to Gardner by virtue of the fact that Avenatti served as Passport 420's manager.

186.  Passport 420 agreed with Avenatti and EA and intended that Avenatti and EA make affirmative misrepresentations to Gardner..  Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420.  Avenatti was then able to use the Aircraft for his own benefit.

187.  These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

188. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

189. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

190. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

191. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

192. Therefore, Passport 420, acting through its manager Avenatti,  acted with oppression,  fraud,  and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

**CROSSCLAIM**

## THIRTEENTH CLAIM FOR RELIEF
## AIDING AND ABETTING FRAUDULENT CONCEALMENT
### (Against Passport 420)

193. The allegations of paragraphs 1 through 192 are re-alleged and incorporated herein by reference.

194. Gardner was in a fiduciary and attorney-client relationship with Avenatti and EA.

195. Avenatti and EA intentionally failed to disclose certain facts that were known only to them, namely that rather than fulfill their obligations to represent Gardner's interests, uphold the fiduciary duties owed to her, and comply with the California Rules of Professional Conduct, they actually intended to embezzle any settlement they obtained for her for the benefit of Passport 420.

196. Once the settlement was entered into, Avenatti and EA intentionally failed to disclose the true terms of the settlement, including that the Individual was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment at a later date, set for 2020.  The monthly payments were actually being made by Avenatti and EA to maintain the façade that the Individual was making the monthly payments.  This allowed Avenatti and EA to take the settlement money from Gardner without her realizing what was occurring.  Similarly, when the monthly payments stopped, their explanation was false as well, but was once again intended to hide the truth from Gardner.

197. Gardner was unaware of these facts.

198. Avenatti and EA intended to deceive Gardner by concealing the facts.

199. Had the omitted information been disclosed, Gardner reasonably would have behaved differently. Among other things, she would not have retained Avenatti and EA.  Had she learned the truth after she entered into her settlement with the Individual, she would have demanded her settlement money and not have permitted Avenatti and EA to embezzle her money and cause Passport 420 to use it to purchase

32

the Subject Aircraft.  She also would not have permitted Avenatti and EA to send her periodic monthly payments in lieu of the actual payments provided for under the terms of the settlement.

200.  Passport 420 knew that Avenatti and EA were making and/or going to fraudulently conceal material information from Gardner by virtue of the fact that it was managed by Avenatti.

201.  Passport 420 gave substantial assistance and/or encouragement   to Avenatti and EA.  Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420.  Avenatti was then able to use the Aircraft for his own benefit.

202.  These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

203.  A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

204.  Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

205.  Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

206.  Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

207.  Therefore, Passport 420, acting through its manager Avenatti,  acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive

**CROSSCLAIM**

1   damages in an amount according to proof at trial.

2

3   **FOURTEENTH CLAIM FOR RELIEF**

4   **CONSPIRACY TO COMMIT FRAUDULENT CONCEALMENT**

5   **(Against Passport 420)**

6   208. The allegations of paragraphs 1 through 207 are re-alleged and

7   incorporated herein by reference.

8   209.  Gardner was in a fiduciary and attorney-client relationship with Avenatti

9   and EA.

10   210.  Avenatti and EA intentionally failed to disclose certain facts that were

11   known only to them, namely that rather than fulfill their obligations to represent

12   Gardner's interests, uphold the fiduciary duties owed to her, and comply with the

13   California Rules of Professional Conduct, they actually intended to embezzle any

14   settlement they obtained for her, for the benefit of Passport 420.

15   211.  Once the settlement was entered into, Avenatti and EA intentionally

16   failed to disclose the true terms of the settlement, including that the Individual was

17   required to make an initial payment of $2,750,000 on or about January 28, 2017 to

18   Gardner with a subsequent payment at a later date.  The monthly payments were

19   actually being made by Avenatti and EA to maintain the façade that the Individual

20   was making the monthly payments.  This allowed them to take the settlement money

21   from Gardner without her realizing what was occurring.  Similarly, when the

22   monthly payments stopped, their explanation was false as well, but was once again

23   intended to hide the truth from Gardner.

24   212.  Gardner was unaware of these facts.

25   213.  Avenatti and EA intended to deceive Gardner by concealing the facts.

26   214.  Had the omitted information been disclosed, Gardner reasonably would

27   have behaved differently. Among other things, she would not have retained Avenatti

28   and EA.  Had she learned the truth after she entered into her settlement with the

34

**CROSSCLAIM**

other individual, she would have demanded her settlement money and not have permitted Avenatti and EA to embezzle her money and cause Passport 420 to use it to purchase the Subject Aircraft.  She also would not have permitted Avenatti and EA to send her periodic monthly payments in lieu of the actual payments provided for under the terms of the settlement.

215.  Passport 420 knew that Avenatti and EA were making and/or going to fraudulently conceal material information from Gardner by virtue of the fact that Avenatti served as Passport 420's manager.

216.  Passport 420 agreed with Avenatti and EA and intended that Avenatti and EA fraudulently conceal the truth from Gardner.  Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420. Avenatti was then able to use the Aircraft for his own benefit.

217.  These events were a substantial factor in causing Gardner injury and Gardner is therefore entitled to damages.

218. A constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

219. Passport 420, acting through its manager Avenatti, acted in conscious disregard for Gardner's rights and put its own interests ahead of the interests of Gardner when it took her settlement money and used the money to purchase the Subject Aircraft, which constitutes malice.

220. Passport 420, acting through its manager Avenatti engaged in despicable conduct that subjected Gardner to cruel and unjust hardship in conscious disregard of her rights, which constitutes Oppression.

221. Avenatti, the manager of Passport 420, intentionally misrepresented and/or concealed material information regarding the fact that Gardner had in fact been paid a $2,750,000 payment, but that Passport 420 had spent that money so that it could purchase the Subject Aircraft.  This constitutes fraud.

**CROSSCLAIM**

222. Therefore, Passport 420, acting through its manager Avenatti, acted with oppression, fraud, and/or malice and Gardner is therefore entitled to punitive damages in an amount according to proof at trial.

## FIFTEENTH CLAIM FOR RELIEF
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT §
## 18 U.S.C. § 1961 *ET SEQ.*
### (Against Passport 420)

223. The allegations of paragraphs 1 through 222 are re-alleged and incorporated herein by reference.

224. Passport 420 is a "person" under 18 U.S.C. § 1961(3) because it is capable of holding, and does hold, "a legal or beneficial interest in property."

225. Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

226. Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions.

227. At all relevant times, Passport 420, along with other individuals and entities, including unknown third parties, operated an association-in-fact enterprise, which was formed for the purpose of allowing Avenatti and the other members to enrich themselves at the expense of third parties, including Gardner. Other members of the enterprise include, amongst others, Avenatti, EA, and Avenatti & Associates, APC.

228. The enterprise will be referred to herein as the "Avenatti Enterprise."

229. Each of the members of the Avenatti Enterprise are conspirators with the others and aided and abetted each other in furtherance of the objectives of the Avenatti Enterprise.

**CROSSCLAIM**

230. The members of the Avenatti Enterprise maintained throughout its duration a pattern of racketeering activity and acquired and/or maintained, directly or indirectly, an interest in or control in the Avenatti Enterprise.  Many of the payments made to lull Gardner into believing that she was in fact receiving periodic settlement payments under the terms of her settlement agreement, were made through the Fedwire system.

231. In addition, Passport 420, who was employed by or associated with the Avenatti Enterprise, engaged in and/or conducted activities that affected interstate commerce as well.  For example, it purchased the Subject Aircraft from Honda Aircraft Company, which is headquartered in North Carolina and took possession of the Subject Aircraft in North Carolina as well.  In doing so, Passport 420, directly or indirectly, conducted or participated in the conduct of the Avenatti Enterprise through a pattern of racketeering activity.

232. On information and belief, the actions of the members of the Avenatti Enterprise's pattern of racketeering activity included wire fraud under 18 U.S.C. § 1343.  Specifically, they devised and/or intended to devise a scheme or artifice to defraud.  In addition, it included money laundering under 18 U.S.C. §§ 1956 and/or 1957.

233. This scheme entailed a series of misrepresentations and/or concealment, as discussed above, to create the illusion that Avenatti's clients, including Gardner, had entered into settlements that would provide for numerous small periodic payments when in fact they had actually entered into settlements for either one lump sum payment or only a few substantial payments.

234. For brevity, the facts of Avenatti's indictment (attached hereto as Exhibit A, and incorporated hereto by reference) indicate the details of the multi-year conduct of the Avenatti Enterprise, including Passport 420, in defrauding Avenatti's clients, including Gardner, of their monies.

235. This allowed Avenatti and other members of the Avenatti Enterprise, like

37

Passport 420, to embezzle the actual settlement payments intended for Avenatti's clients and use the funds for their own benefit or for the benefit of Avenatti. Members of the Avenatti Enterprise would then provide funds to be sent to Avenatti's clients to lull them into believing that they were receiving periodic settlement payments so that they would not learn the truth about the settlements.

236.  Avenatti's clients relied on Avenatti's statements about the nature of the settlements and the falsified settlement agreements he showed them.  In relying on Avenatti's statements and in the case of some clients falsified settlement agreements, the clients suffered damages in the form of the difference between the settlement payments they were actually entitled to and the fake settlement payment Avenatti sent them so that they would not realize the truth.

237. In the case of Gardner in addition to or in the alternative to damages, a constructive trust must be imposed that would provide Gardner with an ownership interest in the Subject Aircraft.

238.  In the case of Gardner, Avenatti and EA intentionally failed to disclose the true terms of the settlement, including that the Individual  was required to make an initial payment of $2,750,000 on or about January 28, 2017 to Gardner with a subsequent payment at a later date.  Instead of receiving this, Gardner received monthly payments that were actually being made by Avenatti and EA to maintain the façade that the Individual was making the monthly payments.  This allowed them to embezzle the settlement money from Gardner without her realizing what was occurring.  Avenatti and EA accomplished this in part through oral communications through the phone with Gardner in which Avenatti lulled her into believing that she was in fact supposed to be receiving periodic payments.  Similarly, when the monthly payments stopped, the explanation was false as well, but was once again intended to hide the truth from Gardner.  Once again, these communications largely occurred by phone between Avenatti and Gardner.

239.  Members of the Avenatti Enterprise used or caused others to use the

38

wires in interstate commerce in order to further and execute the fraudulent scheme. For example, Avenatti called Gardner on many occasions in order to mislead her into believing that nothing was awry. The wires were also used in interstate commerce in the Fedwire system. For example, on or about June 18, 2018 a payment of approximately $16,000 was made from EA Trust Account 4613 through the Fedwire system to Gardner's Chase bank account. This was one of the periodic payments that was used to lull Gardner into believing that she was in fact receiving periodic payments from the Individual agreement.

240. Moreover, on information and belief, Passport 420's purchase of the Subject Aircraft was largely accomplished through the wires. The payment of the Subject Aircraft was made by wire transfer to Honda Aircraft Company, LLC. Moreover, given the fact that Passport 420 and its members are located in Southern California and Honda Aircraft Company, LLC is headquartered in North Carolina, which is also the location where the Subject Aircraft was manufactured and where Passport 320 took possession of it, on information and belief many of the communications with Honda Aircraft Company, LLC that were necessary for purchasing and taking possession of the Subject Aircraft occurred through the wires, whether by email or phone. Among other things, Avenatti and EA were able to hide Gardner's funds in Passport 420 in the form of the Aircraft, which was purchased with money stolen from Gardner and owned by Passport 420. Avenatti was then able to use the Aircraft for his own benefit.

241. In addition Passport 420 was involved in one or more financial transactions in violation of 18 U.S.C. §§ 1956 and/or § 1957 (money laundering). Passport 420 purchased the Subject Aircraft knowing that the transaction was designed in whole or in part to conceal or disguise the location, source, ownership, and/or the proceeds of the wire fraud that resulted in Gardner losing her settlement funds. Further Passport 420 knowingly engaged in a monetary transaction with the stolen settlement money, which is worth more than $10,000.

39

**CROSSCLAIM**

## PRAYER FOR RELIEF

WHEREFORE, Cross-Claimant Gardner prays for judgment against Cross-Defendants as follows:

Cross-Claimant Gardner seeks to recover the following damages and obtain the following relief from Cross-Defendants:

(a)   Economic loss and damages suffered by Cross-Claimant Gardner;

(b)   Restitution;

(c)   Recognition of a constructive trust granting Cross-Claimant Gardner an ownership interest in HondaJet HA-420, Serial Number SN42000029, Registration N227WP

(d)   Punitive damages;

(e)   All reasonable and necessary attorneys' fees;

(f)   Court costs;

(g)   Pre and post-judgment interest;

(h)   A declaratory judgment as to whether and to whom any claims under the Policies should be paid out, or alternatively whether and to whom any premiums should be returned;

(i)   A declaratory judgment as to the amount of Cross-Claimant Gardner's ownership interest in HondaJet HA-420, Serial Number SN42000029, Registration N227WP;

(j)   Nominal damages;

(k)   And such other relief to which Cross-Claimant Gardner may show herself justly entitled.

DATED: December 20, 2019          **THE X-LAW GROUP, P.C.**

By:_____//s//_____
    FILIPPO MARCHINO, ESQ.,
    Attorneys for Cross-Claimant Gardner

**CROSSCLAIM**

1

2                              **JURY DEMAND**

3

4          Cross-Claimant hereby demands a trial by jury on all issues so triable.

5

6

7   DATED: December 20, 2019            **THE X-LAW GROUP, P.C.**

8

9

10                                  By:_____//s//_____

11                                     FILIPPO MARCHINO, ESQ.,
                                       Attorneys for Cross-Claimant Gardner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CROSSCLAIM**